```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF OHIO
                         EASTERN DIVISION
```

David L. Dunham,                 :

       Plaintiff,           :

  v.                             :           Case No. 2:13-cv-0794

Unum Group, et al.,              :
                                      Magistrate Judge Kemp
       Defendants.         :

<u>OPINION AND ORDER</u>

Plaintiff David L. Dunham worked for the Ohio State University for a number of years as the Director of Major Giving at WOSU-TV. He had disability insurance coverage through his work. The disability policy involved in this case was issued by Defendant Unum Life Insurance Company of America.

Mr. Dunham asserts that he became disabled on October 10, 2011. He submitted a claim to Unum for disability benefits. It was denied. After exhausting the remedies available to him under the policy, he filed this suit, alleging breach of contract and bad faith. Unum has moved for summary judgment. For the following reasons, that motion will be denied.

I. <u>The Undisputed Facts</u>

Because Unum has asked for summary judgment, the Court must focus on the facts which are (at least for purposes of the motion) not disputed (and which, of course, are material to Mr. Dunham's claims and Unum's defenses). From the parties' filings, including the claim file (Doc. 43) and Mr. Dunham's deposition (Doc. 46), the Court has compiled this narrative statement of those facts.

Mr. Dunham became the Director of Major Giving at WOSU-TV in approximately 2008. Before taking that job, he had experienced two back surgeries. While at OSU, he was the beneficiary of a long-term disability insurance policy entered into between The

Ohio State University and Unum Life Insurance Company of America. The policy covered all active full-time and seasonal employees who worked at least 20 hours per week. It contained an "elimination period" of 90 days; if someone met the eligibility requirements of the policy, benefits began on the 91st day after the beginning of that person's disability. "Disability" was defined as a condition that caused someone to be "**limited** from performing the **material and substantial duties** of [that person's] **regular occupation** due to ... **sickness** or **injury** ...." After 24 months of payments were made, the definition changed to "unable to perform the duties of any **gainful occupation** for which [the person was] reasonably fitted by education, training, or experience." (A copy of the policy is attached to Unum's summary judgment motion, Doc. 45, as Exhibit One, and also to the complaint; the terms quoted in bold type appear that way in the policy and are all defined terms). For purposes of the motion under consideration, the important terms are "limited," which means something a person cannot do, and "regular occupation," which means the job someone was doing at the time he or she allegedly became disabled, but "as it is normally performed in the national economy, instead of how the work tasks are performed for a specific employer or at a specific location."

On October 10, 2011, Mr. Dunham went to work as he usually did. After arriving at work, he discovered that he could not function due to pain, and he went home. A few days later, he called his doctor, Dr. Kowalewsky, explained the situation, and asked for a prescription for steroids. When he had experienced similar symptoms in the past, a course of steroids (coupled with ice, heat, and hydrotherapy) often resolved the problem. This time, that did not work. Consequently, he made an appointment to see Dr. Kowalewsky in person. That appointment happened on December 6, 2011.

According to the office visit note (all of the doctors' reports referred to here are in the claim file), the purpose of the visit was "medication refill."  Mr. Dunham told Dr. Kowalewsky that he had been missing work due to back pain and that he was making a "slow recovery ... back to baseline almost..."  His diagnosis at that time was chronic pain syndrome, and he was taking a large number of prescription medications.  His examination was positive for back pain in the lumbosacral spine, of moderate severity.  Dr. Kowalewsky agreed to complete FMLA forms, thought an MRI might be needed in the future, and continued Mr. Dunham on mostly the same medications.

Mr. Dunham did not return to work on a full-time basis, however.  After exhausting his FMLA leave and after the 90-day waiting period expired (which happened in early January, 2012), he applied for long-term disability benefits on March 7, 2012.  On the form (which is also part of Doc. 43, beginning at page 000048), he said he had not worked since February 15, 2012, but noted that he had tried to come into work on several occasions since October 10, 2011, but had not been able to stay.

Unum received Mr. Dunham's application on March 15, 2012.  By April 27, 2012, it had decided to deny benefits.  Its given reason was that "your medical condition does not rise to a level that would preclude you from working in your occupation."  (Doc. 43, page 000325).  The denial letter explained that two physicians to whom Unum had referred the matter both concluded that Mr. Dunham could still perform the physical requirements of his job, which were, according to Unum's vocational specialist, occasional exertion of up to ten pounds of force, and working in a mostly seated position with brief periods of standing and walking and with frequent travel.  Unum had contacted Dr. Kowalewsky before issuing the denial letter; he said, in a letter dated April 9, 2012, that Mr. Dunham could continue to work if

"the employer wants a sedated worker whom (sic) risks being involved in a motor vehicle accident driving to and from work or we can have him lie flat on his office floor at times since he cannot maintain one position all too long." (Doc. 49, Mr. Dunham's responsive memorandum, Ex. 14).

Mr. Dunham appealed the denial. In a letter dated March 7, 2013, Unum denied the appeal, stating that "We found the decision on Mr. Dunham's claim is correct." (Doc. 43, page 000612). The letter reviewed additional medical evidence but reaffirmed Unum's conclusion that Mr. Dunham did not have a medical condition which prevented him from doing a sedentary job that required occasional standing and walking (such as would be involved in traveling to meetings or meeting clients).

The record contains a large number of notes of treatment from Mr. Dunham's doctors, as well as reviews done by professionals retained by Unum. Rather than go through all of these as part of the statement of undisputed facts, the Court will refer to them, as necessary, in later sections of this Opinion and Order. Unum contends, in its motion, that based on the undisputed facts - primarily those just recited, together with some treatment notes from Dr. Kowalewsky and a specialist, Dr. Elder - it is clear (and not in dispute) that Mr. Dunham could still do the primary functions of his job, at least as it is performed in the national economy, during his elimination period - that is, between October 10, 2011 and January 8, 2012 - and that, for this reason, he did not meet the eligibility requirements of the policy. If that is so, of course, Unum would not have breached the policy by not paying him disability benefits.

## II. The Summary Judgment Standard

Summary judgment is not a substitute for a trial when facts

material to the Court's ultimate resolution of the case are in dispute.  It may be rendered only when appropriate evidentiary materials, as described in Fed. R. Civ. P. 56(c), demonstrate the absence of a material factual dispute and the moving party is entitled to judgment as a matter of law. Poller v. Columbia Broad. Sys., Inc., 368 U.S. 464, 82 S. Ct. 486, 7 L. Ed.2d 458 (1962).  The moving party bears the burden of demonstrating that no material facts are in dispute, and the evidence submitted must be viewed in the light most favorable to the nonmoving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 90 S. Ct. 1598, 26 L. Ed.2d 142 (1970).  Additionally, the Court must draw all reasonable inferences from that evidence in favor of the nonmoving party.  United States v. Diebold, Inc., 369 U.S. 654, 82 S. Ct. 993, 8 L. Ed.2d 202 (1962).  The nonmoving party does have the burden, however, after completion of sufficient discovery, to submit evidence in support of any material element of a claim or defense on which that party would bear the burden of proof at trial, even if the moving party has not submitted evidence to negate the existence of that material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  Of course, since "a party seeking summary judgment ... bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact," Celotex, 477 U.S. at 323, the responding party is only required to respond to those issues clearly identified by the moving party as being subject to the motion.  It is with these standards in mind that the instant motion must be decided.

### III.  Analysis

Before getting to the merits of the summary judgment motion, the Court finds it necessary to clarify the appropriate standard

of review.  Mr. Dunham filed this case in state court and asserted state law claims.  Unum removed it on the basis of diversity of citizenship jurisdiction.  It did not (and rightly so) argue that Mr. Dunham's claims were either governed by or preempted by ERISA.  That position is correct because there is an exemption found in 29 U.S.C. §1003(b)(1) for "governmental plans"; that subsection says that the provisions of ERISA do not apply to "any employee benefit plan if - (1) such a plan is a governmental plan (as defined in section 1002(32) of this title)."  A "governmental plan" is defined in 29 U.S.C. §1002(32) as "a plan established or maintained for its employees by the Government of the United States, by the government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing."  The Ohio State University is an agency or instrumentality of the State of Ohio.  Therefore, the policy which covered Mr. Dunham was a governmental plan.  See also Eschleman v. UnitedHealth Group, Inc., 2013 WL 4832066 *S.D. Ohio Sept. 10, 2013)(employee benefit plan covering employees of the State of Ohio is an exempt governmental plan).  That is why Ohio law, not ERISA, governs this dispute.

Why is that important?  First, Mr. Dunham argues, in his memorandum opposing summary judgment, that the issue before the Court is whether, based on the administrative record (plus some evidence developed afterwards), Unum's denial of benefits was arbitrary and capricious.  That is the ERISA standard of review in cases where the plan grants discretion to the plan administrator, see, e.g., Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989), but it has nothing to do with a state law breach of contract claim.  Even ERISA's alternate standard of review - a *de novo* standard for decisions made under plans which do not give the plan administrator discretionary authority, see, e.g. Wilkins v. Baptist Healthcare System, Inc., 150 F.3d 609

(6th Cir. 1998) - is inapplicable here, because what the Court reviews in a non-ERISA state law case for breach of contract is not whether, based solely on the record before it at the time, the plan administrator made a defensible decision, but the underlying question of whether the person claiming benefits met the contractual requirements for disability under the plan.  The reasonableness of the administrator's decision is certainly relevant to the bad faith claim, but the contract claim is tried *de novo* after full discovery has occurred, and in the event the material facts are in dispute, the case simply goes to the jury like any other contract dispute.  That is the way, more or less, in which Unum has argued its motion, and it is the way the Court will review it.

Having clarified the proper standard and method of review, another issue arises.  The administrative record was filed with the Court.  In an ERISA benefits case, the significance of the record is not that everything in the record has independent evidentiary value; rather, the significance of the record is that it constitutes the body of evidence reviewed by the plan administrator.  When ERISA governs, whether the Court reviews the administrator's decision under an arbitrary and capricious standard or *de novo*, it is still deciding if the administrative decision was correct *on the basis of the record*.  Here, however, at least as to the breach of contract claim, the record is largely irrelevant.  The question the Court must resolve is not whether the plan administrator (in this case, Unum) made a good or a bad decision based on what it had available for review; the question is whether there is a triable issue of fact as to whether Mr. Dunham was actually disabled (as the plan defines it) for the entire elimination period.  Any evidence relating to that issue, whether or not it was presented to the plan administrator, is admissible on that question.  But, of course, for the Court to

-7-

consider any evidence in connection with a summary judgment motion, that evidence must meet the evidentiary standards set forth in Rule 56(c).

There is not much of that type of evidence in this case. Mr. Dunham's deposition qualifies, of course, as does the deposition of his supervisor, Mr. Rieland.  Mr. Dunham has also filed an affidavit, which is admissible for summary judgment purposes.  The policy is an attachment to the complaint, so the Court can consider that as well.  Nothing else, however, is in proper form; so, for example, none of the competing medical opinions reflected in the administrative record are sworn to, so the Court cannot consider any of them as substantive evidence on the issue of whether Mr. Dunham was or was not disabled during the relevant time frame.

With the analytical process in which the Court must engage now clarified, the key question to answer in ruling on Unum's motion can be distilled to this.  Setting aside any reference to the administrative record, none of which, in its present form, can be used as substantive evidence here, Unum is basically arguing that Mr. Dunham has not, and cannot, prove that he was disabled from his regular occupation on a continuous basis from October 10, 2011 to January 8, 2012.  Although Unum has not really presented any evidence showing that he was not so disabled, that is not its burden.  Once it challenged Mr. Dunham's ability to prove his case by moving for summary judgment, it became his burden to show that there is enough evidence on the issue of disability to support a verdict in his favor.  <u>Celotex, supra; see also Street v. J.C. Bradford & Co.</u>, 886 F.2d 1472, 1478 (6th Cir. 1989) ("[i]f, after a sufficient time for discovery, the opposing party is unable to demonstrate that he or she can [show that there is a triable issue of fact], summary judgment is appropriate").

-8-

Here is what Mr. Dunham has presented.  First, his affidavit states that he injured his back on or about October 11, 2011, and due to pain he could not remain sitting or standing for more than a few minutes at a time and was not able to drive to work.  He obtained medication which did not help him to manage the pain, and it also sedated him to the point where he could not concentrate.  He could not sit in one position for more than 15-30 minutes at a time.  He was sleeping only 2-3 hours per night.  He was terminated from his job in March, 2012, essentially for non-attendance.  He has been told not to drive more than 15 minutes at a time due to his medication.  In his deposition, Mr. Dunham made largely the same statements, although he said there that he was unaware of why his back pain suddenly got worse in October, 2011 (his actual statement was, in response to a question about whether anything was unique about that day, "Other than I could barely move or think, no."  See Doc. 46, p. 43).

The other evidence Mr. Dunham has presented is the deposition of his supervisor, Mr. Rieland.  Mr. Rieland testified that on a daily basis, a person in Mr. Dunham's position might spend a lot of time seated, or he might travel around central Ohio meeting with potential donors or sponsors.  He saw Mr. Dunham's job performance change in 2011, including the fact that he did not come to work as he usually did and often left work after coming in.  Also, someone in that position had to be "sharp" and "alert" when meeting with donors.  A significant part of the job involved developing relationships, going to events, socializing, driving, and walking, as well as sitting through events or meetings.  Mr. Rieland agreed that he had never studied the job duties of an average fundraising job in the national economy.

What could a reasonable person infer from this evidence?  First, the only admissible evidence in the record about what a

fundraiser does - and that was Mr. Dunham's regular occupation - is that, at a minimum, it requires someone to sit, stand, walk, concentrate, travel (at least locally), and be able physically to work an eight-hour day, or more.  Perhaps not all fundraisers do that, but a juror could infer from the evidence and common sense that those are fairly typical duties for someone with Mr. Dunham's job, and that his job was not so atypical of how other fundraisers perform that no inference could be made about the occupation in general.  It is interesting to note that even Unum's denial letter referred to the job duties of a fundraiser as involving almost constant sitting, with some standing and walking, and with frequent travel.

   Second, a reasonable person could infer that, given the way Mr. Dunham described his symptoms, he could not do that job.  Accepting his testimony as true, which must be done in ruling on a summary judgment motion, he could not continuously either sit or stand, he could not concentrate, and he could not work an eight-hour day even seated at his desk.  That persisted throughout the elimination period; in fact, his employment was terminated for that very reason.  Mr. Rieland confirmed the fact that Mr. Dunham was not doing his job satisfactorily during this time, and Mr. Dunham's back problem is the only reason in the record which explains why he was not.  A jury could find that Mr. Dunham's back problem is an "injury" or "sickness" as defined in the policy, and Unum does not argue otherwise.  Consequently, there is enough evidence in the record to permit a jury to find, if it credited all of that evidence, that Mr. Dunham was unable to work as a fundraiser from October 10, 2011 through January 8, 2012 due to an injury or sickness.  That finding would support a breach of contract claim, and that is enough to defeat summary judgment.

   Unum argues at length that most of the evidence that Mr.

-10-

Dunham presented about his condition consists of after-the-fact doctors' examinations - that is, examinations which occurred after January 8, 2012. The question which the jury must determine, of course, is what symptoms and limitations Mr. Dunham suffered during that period. A later examination might or might not shed light on that question, but just because someone sees a doctor days or months after a certain date does not mean the doctor cannot have a valid opinion as to the condition prior to that date, or at least an opinion to the effect that if the patient says the condition has remained the same for a long period of time - something a jury would be entitled to hear and to evaluate - the condition limited the patient's ability to work just as much when it first developed as it did when he finally saw the doctor. This is really an argument about the weight of the evidence, which is normally an issue for the jury; in any event, since none of the medical opinions appear to be properly before the Court at this time, it is not an argument the Court can consider.

### III.  Conclusion and Order

It seems unusual to the Court that, in a case involving a claim for medically-based disability, neither party submitted, in admissible form, any medical opinions. Surely that will change at trial. However the Court's job at this stage of the case is simply to decide, based on the evidence which has been submitted in proper form, if a jury could decide the case in Mr. Dunham's favor. As the Court has explained, the answer to that question is "yes." Consequently, Unum's motion for summary judgment (Doc. 45) is denied. The parties shall contact courtroom deputy Spencer Harris to select a trial date.


/s/ Terence P. Kemp
United States Magistrate Judge